IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>   *Plaintiff*,<br><br>v.<br><br>DAJUAN CARTER,<br>   *Defendant*. | Criminal Action No. ELH-11-0164 |

**MEMORANDUM OPINION**

On September 22, 2011, petitioner DaJuan Carter pled guilty to possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).  *See* Plea Agreement at 1 (ECF 62). On July 11, 2012, Carter, filed a "Motion to Vacate, Correct, or Set A Side [sic] Sentence Pursuant to 28 U.S.C. § 2255" ("Motion," ECF 134), along with several exhibits.[1]  The Government filed a "Response to Defendant's Motion to Vacate, Correct, or Set Aside Sentence Pursuant to 28 U.S.C. § 2255" ("Response," ECF 136),[2] along with the Affidavit of Carter's attorney, Richard Bardos (ECF 136-1).[3]  The Motion is ripe for decision, and no hearing is necessary to resolve it.  *See* Local Rule 105.6.  Because the petition and the record conclusively show that Carter is not entitled to relief on the grounds asserted, I will deny the Motion.  *See* 28 U.S.C. § 2255(b); *Raines v. United States*, 423 F.2d 526, 529 (4th Cir. 1970).

**Background**[4]

---

[1] Although Carter was represented in the trial and appellate courts by Richard Bardos, he is now self-represented.

[2] Carter did not file a reply.  However, he recently filed a Motion for Summary Judgment (ECF 138), complaining (incorrectly) that the Government failed to respond.

[3] Curiously, the Government's response was also docketed as ECF 137.

[4] The facts are derived from Carter's Plea Agreement, to which he stipulated.  *See* Plea Agreement at 10.

At about 9:30 p.m. on December 2, 2010, Baltimore City Police Detectives Gregory Fisher, Antwyne Jones, and Daniel Meehan (collectively, "the Detectives") were heading west in an unmarked police vehicle near the 2700 block of Beryl Avenue in Baltimore City, Maryland, when they saw an Acura fail to come to a complete stop at a stop sign.  The Detectives executed a traffic stop of the Acura.  Brandon Williams was identified as the driver of the Acura, and Carter was in the front passenger seat.  Co-defendant Renade Pace was seated in the rear right passenger seat.

As the Detectives approached the Acura, Detective Fisher saw Pace place a revolver on the floor behind the driver's seat and then attempt to conceal the revolver with his foot. Detective Fisher yelled, "Gun, gun, gun!"  Detective Meehan removed Pace from the Acura, while Detective Jones removed the revolver from the rear of the vehicle.  As Detective Meehan removed Carter from the front passenger seat, Carter spontaneously exclaimed: "I have one, too."  Thereafter, Detective Meehan recovered a revolver from Carter's waistband.

Carter and Pace were subsequently indicted.  Carter was charged with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).  He moved to suppress the two revolvers and his statement, "I have one, too."  *See* Motion to Suppress Tangible and Derivative Evidence from Search and Seizure (ECF 31).  Following a hearing held on August 2, 2012, this Court denied Carter's motions (ECF 44).[5]

By a plea agreement dated August 10, 2011, and signed by Carter on September 22, 2011, Carter agreed to a conditional plea of guilty, pursuant to Fed. R. Crim. P. 11(c)(1)(C). Under the terms of the plea agreement, the parties agreed to a sentence for Carter of 180 months imprisonment.  Carter's Plea Agreement also provided, in pertinent part: "The Defendant and [the Government] agree and stipulate that pursuant to U.S.S.G. § 4B1.4(a), the Defendant is an

---

[5] The motion hearing transcript was filed on September 13, 2011, as ECF 53.

Armed Career Criminal." *See id.* at 4. And, Carter expressly reserved his right to appeal the denial of his motion to suppress and to change his plea should that decision be reversed. *See* Plea Agreement at 1.

A plea colloquy was conducted on the record on September 22, 2011. *See* ECF 56. However, no transcript of the hearing was furnished to this Court in connection with this petition.[6] Carter was sentenced the same day, pursuant to his request, and with the consent of the Government. *See* ECF 54, 55. At the sentencing, the Court imposed the mandatory statutory minimum of 180 months' imprisonment, Order at 2 (ECF 60), which was below the advisory sentencing Guidelines range of 188 months to 235 months. *See* Plea Agreement at 4.

In an unreported *per curiam* opinion of April 6, 2012, the United States Court of Appeals for the Fourth Circuit affirmed this Court's denial of Carter's motion to suppress. *See United States v. Carter*, 471 F. App'x 238 (2012) (*per curiam*). This Motion followed on July 11, 2012.

**Contentions**

Carter seems to complain that he was erroneously designated as an Armed Career Criminal, and asks this Court to vacate his sentence and re-sentence him to a revised "guideline sentence." According to Carter, he received ineffective assistance of appellate counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), Motion at 2, 5, because his appellate counsel failed to rely on *United States v. Simmons*, 649 F.3d 237, 239, 247 (4th Cir. 2011). In that case, a district court was found to have improperly considered as a felony a defendant's North

---

[6] On May 23, 2012, Carter filed a motion for production of sentencing transcripts without costs (ECF 129), which this Court denied, without prejudice (ECF 131). As of that date, Carter had not yet filed a motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255, and failed to show a particularized need for production of the transcript at the government's expense. *See United States v. MacCollom*, 426 U.S. 317, 321-22 (1979); *United States. v. Shoaf*, 341 F.2d 832, 833-834 (4th Cir. 1964). Although Carter subsequently filed the § 2255 petition, he never re-filed the motion for production of the sentencing transcript. Nor did the Government submit a transcript of the plea colloquy.

Carolina conviction for first-time marijuana possession, where the offense did not expose the defendant to punishment of more than one year. *See* Motion at 2. Claiming that Maryland's sentencing guidelines are "almost identical" to those of North Carolina, Carter insists that *Simmons* applies to his case. In his view, under *Simmons*, 649 F.3d 237, his prior convictions did not qualify as felonies, and therefore he did not qualify as an Armed Career Criminal. Motion at 3.

The Government responds that *Simmons*, 649 F.3d 237, did not apply to Carter's sentence "because [Carter] ha[s] no prior North Carolina convictions that qualif[y] him as an Armed Career Criminal in this matter." Response at 6. Therefore, it contends that Carter cannot prevail with regard to his *Strickland* challenge.

## Discussion

Pursuant to 28 U.S.C. § 2255(a), a prisoner in federal custody may "move the court which imposed the sentence to vacate, set aside or correct the sentence" if the petitioner shows "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ."

To challenge successfully a conviction under 28 U.S.C. § 2255 based on a Sixth Amendment claim of ineffective assistance of appellate counsel, a petitioner must satisfy the two-prong test set forth in *Strickland*, 466 U.S. at 687-88. *See, e.g.*, *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2011) (applying *Strickland* to appellate proceedings) (citing *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000)); *see also Hill v. Lockhart,* 474 U.S. 52 (1985). First, the petitioner must show that counsel's performance was not "within the range of competence normally demanded of attorneys in criminal cases," *Strickland,* 466 U.S. at 687, and was "below an

objective standard of reasonableness," measured by "prevailing professional norms." *Id.* at 688. Notably, counsel's conduct is presumed to be competent. *Id.* at 689. Second, the petitioner must show that counsel's deficient performance "prejudiced [his] defense." *Id.* at 687. To satisfy the "prejudice prong," a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 697. *See Lockhart v. Fretwell,* 506 U.S. 364, 369 (1993) (stating that, under the second prong, the petitioner must prove that the "result of the proceeding was fundamentally unfair or unreliable").

"Keenly aware of the difficulties inherent in evaluating counsel's performance, the Supreme Court has admonished that courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Lawrence v. Branker*, 517 F.3d 700, 708 (4th Cir. 2008) (quoting *Strickland*, 446 U.S. at 689). In applying *Strickland* to counsel's performance on appeal, "courts must accord appellate counsel the 'presumption that he decided which issues were most likely to afford relief . . . .'" *Bell*, 236 F.3d at 164. "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Id.* (quoting *Robbins*, 528 U.S. at 288). Accordingly, it is "difficult to demonstrate" that counsel's performance was unreasonable. *Id.* (quoting *Robbins*, 528 U.S. at 288).

In this case, I readily conclude that Carter is not entitled to habeas relief for ineffective assistance of appellate counsel, because Carter is unable to demonstrate that counsel's performance on appeal was deficient, so as to deprive him of the counsel guaranteed by the Sixth Amendment. Put another way, Carter has not shown that counsel made any errors, or that his performance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.

First, the parties agreed to a sentence of 180 months under Fed. R. Crim. P. 11(c)(1)(C). Under the conditional plea agreement, Carter was not entitled to challenge his status as an Armed Career Criminal. In particular, he waived his right to appeal his sentence, "including . . . any issues that related to the establishment of the advisory guidelines range, the determination of [his] criminal history, [and] the weighing of the sentencing factors," so long as he received a sentence of 180 months' incarceration. *See* Plea Agreement at 4. Because the sentencing court imposed the agreed-upon sentence of 180 months, the appellate waiver applied.

An appellate waiver is binding so long as it is made knowingly and voluntarily, judged by the totality of the circumstances surrounding the waiver. *See United States v. General*, 278 F.3d 389, 400 (4th Cir. 2002) (considering validity of appellate waiver based on defendant's familiarity with terms of the plea). In this case, the circumstances confirm that Carter's plea was knowing and voluntary. The plea letter contains an acknowledgment by signature that Carter had read the plea agreement, reviewed it with his attorney, understood it, and voluntarily agreed to it. *See* Plea Agreement at 8. Carter's counsel likewise confirmed that he had reviewed the Plea Agreement, and that Carter had confirmed to him that Carter understood and agreed to the Plea Agreement, and that such agreement was knowing and voluntary. *See id.* And, Carter does not dispute that he understood and voluntarily accepted the Plea Agreement. Nor does he claim that he received ineffective assistance of counsel during the plea hearing, or that his plea is otherwise invalid. Thus, any request to revisit Carter's sentence on appeal would have been barred by his appellate waiver, and his counsel's decision *not* to raise *Simmons* on appeal was not unreasonable.

Second, even if Carter's sentence could have been revisited, *Simmons* offers no grounds to modify Carter's status as an Armed Career Criminal. As the Government notes, Carter's

status was based on prior convictions in Maryland, not North Carolina.  Despite some superficial similarities between the sentencing schemes (for example, Carter contends that both states classify offenses into three tranches based on degree of severity, *see* Motion at 5), *Simmons* would not have had any effect on Carter's case.

In *Simmons*, the Fourth Circuit found that the defendant had not been exposed to punishment by more than one year for his first-time conviction because the state sentencing court never made the finding of recidivism that was necessary to subject the defendant to a sentence of more than eight months.  *See* 649 F.3d at 243-45.  Here, on the other hand, Carter received sentences of eight years and five years for two of his prior drug convictions, and, under Maryland law, the statutory maximum for those convictions was twenty years.  *See* Md. Code § 5-608(a) of the Criminal Law Article.

Carter's attorney, Richard Bardos, avers in his Affidavit that he examined *Simmons* and discussed the case with Carter by phone and in writing.  *See* Letter of January 31, 2012, from Richard Bardos to DaJuan Carter (ECF 134-3); Affidavit of Richard Bardos (ECF 136-1).  Because Bardos determined that Carter's reliance on *Simmons* was unfounded, he declined to raise *Simmons* on appeal.  *Id.*  Carter's lawyer was not unreasonable or ineffective in failing to raise *Simmons,* as it has no application to Carter's case.

## Conclusion

For the foregoing reasons, the Court will deny the Motion.  A separate Order, consistent with this Opinion, follows.


Date: October 19, 2012               /s/_____
                                     Ellen Lipton Hollander
                                     United States District Judge