IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,

v.

DAJUAN CARTER,
*Defendant.*

Criminal Action No. ELH-11-164

## MEMORANDUM

On June 30, 2020, Dajuan Carter, through counsel, filed an "Emergency Motion For Compassionate Release Pursuant To 18 U.S.C. § 3582(c)(1)(A)(i)." ECF 154. The motion is supported by a memorandum (ECF 156) (collectively, the "Motion") and four exhibits. ECF 156-1 to ECF 156-4. The government opposes the Motion. ECF 162. Defendant has replied. ECF 165. And, on August 18, 2020, the Court received correspondence from Mr. Carter (ECF 167), addressing his medical condition, the difficulties in social distancing at FCI Ray Brook, where he is incarcerated, and other matters.

No hearing is necessary to resolve the Motion. For the reasons that follow, I shall deny the Motion.

## I.    Background

On March 24, 2011, a grand jury sitting in the District of Maryland returned an indictment against Carter and one codefendant. ECF 1. Carter was charged in Count Two with unlawful possession of a firearm, in violation of 18 U.S.C. § 922(g). ECF 1. Carter initially appeared before U.S. Magistrate Judge Beth Gesner on March 29, 2011, and was temporarily detained pending a detention hearing. ECF 7. On April 1, 2011, Carter was ordered detained pending trial. ECF 13.

Following his indictment, Carter moved to suppress physical evidence as well as incriminating statements. ECF 31. After a hearing held on August 2, 2012, this Court denied Carter's motions. ECF 44.

Pursuant to a Plea Agreement (ECF 62), Carter entered a plea of guilty on September 22, 2011, as to Count Two of the Indictment. ECF 56.[1] The plea was tendered pursuant to Fed. R. Crim. P. 11(c)(1)(C), by which the parties agreed to a term of 180 months' imprisonment as the appropriate disposition. ECF 62, ¶ 9. Carter's Plea Agreement also provided, in pertinent part: "The Defendant and [the Government] agree and stipulate that pursuant to U.S.S.G. § 4B1.4(a), the Defendant is an Armed Career Criminal." *See id.* at 4. And, Carter expressly reserved his right to appeal the denial of his motion to suppress and to change his plea should that decision be reversed. *See id.* at 1.

Carter was sentenced the same day, pursuant to his request, and with the consent of the Government. *See* ECF 54, ECF 55; ECF 60 (Judgment). Carter qualified as an armed career criminal. *See* 18 U.S.C. § 924(e). At the sentencing, the Court imposed the mandatory statutory minimum term of 180 months' imprisonment (ECF 60), which was below the advisory sentencing Guidelines range of 188 months to 235 months. *See* ECF 62, ¶ 7. The defendant's sentence presumably dates to March 28, 2011, when he was arrested. ECF 8.

In an unreported per curiam opinion of April 6, 2012, the Fourth Circuit affirmed the Court's denial of Carter's motion to suppress. *See United States v. Carter*, 471 F. App'x 238 (4th Cir. 2012) (per curiam). And, by Memorandum Opinion and Order of October 19, 2012 (ECF 139, ECF 140), this Court denied Carter's post-conviction motion. ECF 125.

---

[1] The Plea Agreement reflects a plea to Count One. But, defendant was charged only in Count Two. And, ECF 56 and ECF 60 reflect that the plea was tendered as to Count Two.

Carter, who has served approximately 115 months of his sentence, is presently incarcerated at FCI Ray Brook in New York. Born in 1985, defendant is 35 years of age. ECF 156-1 at 51. According to the government, Carter has a projected release date of December 23, 2023. ECF 162 at 2.

On May 18, 2020, Carter, through counsel, submitted a Request for Compassionate Release to Warden Stanley Lovett of FCI Ray Brook. ECF 156-2 at 1-2. The Warden denied defendant's request on May 19, 2020. *Id.* at 3. The instant Motion followed on June 30, 2020. ECF 156.

Additional facts are included, *infra*.

## II.   Standard of Review

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson,* 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *see Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, 18 U.S.C. § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence. Section 3582 was adopted as part of the Sentencing Reform Act of 1984. It originally permitted a court to alter a sentence only upon a motion by the Director of the BOP. *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984). Thus, a defendant seeking compassionate release had to rely on the BOP Director for relief. *See, e.g*., *Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866-67 (11th Cir. 2018); *Jarvis v. Stansberry*, No. 2:08CV230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008)

(denying compassionate release motion because § 3582 "vests absolute discretion" in the BOP).

However, for many years the safety valve of § 3582 languished. BOP rarely filed motions on an inmate's behalf. As a result, compassionate release was exceedingly rare. *See Hearing on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (observing that, on average, only 24 inmates were granted compassionate release per year between 1984 and 2013).

In December 2018, Congress significantly amended the compassionate release mechanism when it enacted the First Step Act of 2018 ("FSA"). *See* Pub. L. 115-391, 132 Stat. 5239 (2018). As amended by the FSA, 18 U.S.C. § 3582(c)(1)(A) permits a court to reduce a defendant's term of imprisonment "upon motion of the Director of [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first. So, once a defendant has exhausted his administrative remedies, he may petition a court directly for compassionate release.

Under § 3582(c)(1)(A), the court may modify the defendant's sentence if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," it finds that

(i) extraordinary and compelling reasons warrant such a reduction;

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by
the Sentencing Commission . . . .

Accordingly, in order to be entitled to relief under 18 U.S.C. § 3582(c)(1)(A)(i), the

defendant must demonstrate that (1) "extraordinary and compelling reasons" warrant a reduction

of his sentence; (2) the factors set forth in 18 U.S.C. § 3553(a) countenance a reduction; and (3)

the sentence modification is "consistent" with the policy statement issued by the Sentencing

Commission in U.S.S.G. § 1B1.13.   The defendant, as the movant, bears the burden of

establishing that he is entitled to a sentence reduction under § 3582.   *See United States v.*

*Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013).

### III.    COVID-19[2]

Defendant filed his Motion while the nation is "in the grip of a public health crisis more

severe than any seen for a hundred years."   *Antietam Battlefield KOA v. Hogan*, CCB-20-1130,

___ F. Supp. 3d ___, 2020 WL 2556496, at *1 (D. Md. May 20, 2020).   That crisis is COVID-

19.[3]   The World Health Organization declared COVID-19 a global pandemic on March 11, 2020.

*See Seth v. McDonough*, PX-20-1028, 2020 WL 2571168, at *1 (D. Md. May 21, 2020).

The judges of this Court "have written extensively about the pandemic."   *United States v.*

*Williams*, PWG-19-134, 2020 WL 3073320, at *1 (D. Md. June 10, 2020) (collecting cases).

Therefore, it is not necessary to recount in detail the "unprecedented nature and impact" of the

pandemic.   *Id.*

---

[2] The Court may take judicial notice of matters of public record.   *See* Fed. R. Evid. 201.

[3] Severe Acute Respiratory Syndrome Coronavirus 2 (SARS-CoV-2) is the cause of
coronavirus disease 2019, commonly called COVID-19.   *See Naming the Coronavirus Disease
and the Virus that Causes It*, WORLD HEALTH ORG., https://bit.ly/2UMC6uW   (last accessed June
15, 2020).

That said, the Court must underscore that the virus is highly contagious. *See Coronavirus Disease 2019 (COVID-19), How COVID-19 Spreads*, Ctrs. For Disease Control & Prevention (Apr. 2, 2020), https://bit.ly/2XoiDDh. Moreover, although many people who are stricken with the virus experience only mild or moderate symptoms, the virus can cause severe medical problems as well as death, especially for those in "high-risk categories . . . ." *Antietam Battlefield KOA*, 2020 WL 2556496, at *1 (citation omitted). As of August 17, 2020, COVID-19 has infected more than 5 million Americans and caused over 170,000 deaths in this country. *See COVID-19 Dashboard*, The Johns Hopkins Univ., https://bit.ly/2WD4XU9 (last accessed Aug. 17, 2020).

The COVID-19 pandemic is the worst public health crisis that the world has experienced since 1918. *See United States v. Hernandez*, ___ F. Supp. 3d ___, 2020 WL 1684062, at *3 (S.D.N.Y. Apr. 2, 2020) ("The COVID-19 pandemic . . . . presents a clear and present danger to free society for reasons that need no elaboration."). The pandemic "has produced unparalleled and exceptional circumstances affecting every aspect of life as we have known it." *Cameron v. Bouchard*, LVP-20-10949, 2020 WL 2569868, at *1 (E.D. Mich. May 21, 2020), *stayed*, ___ Fed. App'x ___, 2020 WL 3100187 (6th Cir. June 11, 2020). Indeed, for a significant period of time, life as we have known it came to a halt. Although many businesses have reopened, many are subject to substantial restrictions. And, in view of the recent resurgence of the virus, businesses are again facing closure.

Unfortunately, there is currently no vaccine, cure, "or proven effective treatment" that is available. *Id.* (citation omitted). Moreover, according to the Centers for Disease Control and Prevention ("CDC"), certain risk factors increase the chance of severe illness. Those risk factors initially included age (over 65); lung disease; asthma; chronic kidney disease; serious heart

disease; obesity; diabetes; liver disease; and a compromised immune system. *See Coronavirus Disease 2019 (COVID-19), People Who Are at Risk for Severe Illness*, CTRS. FOR DISEASE CONTROL & PREVENTION (May 14, 2020), https://bit.ly/2WBcB16.

On June 25, 2020, the CDC revised its guidance. Then, on July 17, 2020, to reflect the most recently available data, the CDC again revised its guidance as to medical conditions that pose a greater risk of severe illness due to COVID-19. *See People of Any Age with Underlying Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION (July 17, 2020), https://bit.ly/38S4NfY.   According to the CDC, the factors that increase the risk include cancer; chronic kidney disease; COPD; being immunocompromised; obesity, where the body mass index ("BMI") is 30 or higher; serious heart conditions, including heart failure and coronary artery disease; sickle cell disease; and Type 2 diabetes.

The CDC has also created a second category for conditions that "might" present a risk for complications from COVID-19. The factors that might increase the risk include cerebrovascular disease, hypertension, pregnancy, liver disease, cystic fibrosis, neurologic conditions, a compromised immune system, smoking, and Type I diabetes. *See id.* Moderate to severe asthma is an underlying medical condition that was moved to the new category by the CDC; it is now identified as a condition that "might" put an individual at higher risk for COVID-19 complications. *See id.*

Thus far, the only way to slow the spread of the virus is to practice "social distancing." *See Coronavirus Disease 2019 (COVID-19), How to Protect Yourself & Others*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://bit.ly/3dPA8Ba (last accessed May 21, 2020).   Social distancing is particularly difficult in the penal setting, however. *Seth*, 2020 WL 2571168, at *2. Prisoners have little ability to isolate themselves from the threat posed by the coronavirus. *Id.*;

*see also Cameron*, 2020 WL 2569868, at *1.  They are not readily able to secure safety products on their own to protect themselves, such as masks and hand sanitizers.  Consequently, correctional facilities are especially vulnerable to viral outbreaks and ill-suited to stem their spread.  *See Coreas v. Bounds*, TDC-20-0780, 2020 WL 1663133, at *2 (D. Md. Apr. 3, 2020) ("Prisons, jails, and detention centers are especially vulnerable to outbreaks of COVID-19."); *see also* Letter of 3/25/20 to Governor Hogan from approximately 15 members of Johns Hopkins faculty at the Bloomberg School of Public Health, School of Nursing, and School of Medicine (explaining that the "close quarters of jails and prisons, the inability to employ effective social distancing measures, and the many high-contact surfaces within facilities, make transmission of COVID-19 more likely"); *accord Brown v. Plata*, 563 U.S. 493 519-20 (2011) (referencing a medical expert's description of the overcrowded California prison system as "'breeding grounds for disease'") (citation omitted).

The Department of Justice ("DOJ") has recognized the unique risks posed to inmates and employees of the Bureau of Prisons ("BOP") from COVID-19.  The DOJ has adopted the position that an inmate who presents with one of the risk factors identified by the CDC should be considered as having an "extraordinary and compelling reason" warranting a sentence reduction. *See* U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I).

On March 23, 2020, the CDC issued guidance for the operation of penal institutions to help prevent the spread of the virus.  *Seth*, 2020 WL 2571168, at *2.  Notably, the BOP has implemented substantial measures to mitigate the risks to prisoners, to protect inmates from COVID-19, and to treat those who are infected.  As the Third Circuit recognized in *United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020), the BOP has made "extensive and professional efforts to curtail the virus's spread."

Moreover, Attorney General William Barr issued a memorandum to Michael Carvajal, Director of the BOP, on March 26, 2020, instructing him to prioritize the use of home confinement for inmates at risk of complications from COVID-19. *Hallinan v. Scarantino*, 20-HC-2088-FL, 2020 WL 3105094, at *8 (E.D. N.C. June 11, 2020). Then, on March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, 134 Stat. 281. In relevant part, the CARES Act authorized the Director of BOP to extend the permissible length of home confinement, subject to a finding of an emergency by the Attorney General. *See* Pub. L. No. 116-136, § 12003(b)(2). On April 3, 2020, the Attorney General issued another memorandum to Carvajal, finding "the requisite emergency . . . ." *Hallinan*, 2020 WL 3105094, at *9. Notably, the April 3 memorandum "had the effect of expanding the [BOP's] authority to grant home confinement to any inmate . . . ." *Id.*

The BOP has implemented substantial measures to protect prisoners from COVID-19 and to treat those who are infected. *See* ECF 162 at 8-10 (detailing measures that BOP has implemented at BOP facilities). As of August 10, 2020, there are no reported infections among the inmates and three infections among the staff at Ray Brook FCI. *See COVID-19*, FED. BUREAU OF PRISONS, https://bit.ly/2XeiYH1.

That said, as with the country as a whole, the virus persists in penal institutions.[4] As of August 10, 2020, the BOP reported that 1,383 inmates and 571 BOP staff currently tested positive for COVID-19; 9,483 inmates and 759 staff have recovered; and 111 inmates and one staff member have died from the virus. *See* https://www.bop.gov/coronavirus/ (last accessed Aug. 10, 2020). *See COVID-19*, FED. BUREAU OF PRISONS, https://bit.ly/2XeiYH1.

---

[4] The *New York Times* reported in June 2020 that cases of COVID-19 "have soared in recent weeks" at jails and prisons across the country. Timothy Williams et al., *Coronavirus cases Rise Sharply in Prisons Even as They Plateau Nationwide*, N.Y. TIMES (June 18, 2020), https://nyti.ms/37JZgH2.

### IV.   Discussion

Carter seeks a reduction of his sentence to time-served under 18 U.S.C. § 3582(c)(1)(A)(i), contending that he "suffers from asthma, which places him at serious risk of becoming severely ill from COVID-19." ECF 156 at 1; *see also* ECF 167. Citing generally to 194 pages of his medical records, Carter submits that he has asthma and "has experienced severe respiratory issues for more than a decade." *Id.* at 8 (citing to ECF 156-1). According to Carter, his asthma constitutes an extraordinary and compelling basis for release because he cannot practice social distancing at FCI Ray Brook, where there is presently an outbreak of COVID-19. *See id.* at 8-12. Further, defendant avers that he is not a danger to the community and that the factors under 18 U.S.C. § 3553(a) favor release because he poses a low risk of recidivism. *Id.* at 8-15.

The government opposes Carter's Motion, primarily on the grounds that his asthma diagnosis does not qualify as an extraordinary and compelling basis for his release. ECF 162 at 5-7. In its view, Carter's medical records merely indicate that he has been diagnosed with asthma and "do not further delineate the severity of the condition." *Id.* at 6. Granting Carter compassionate release based on his unspecified asthma diagnosis, the government contends, would open the floodgates to similar claims and water down the CDC's guidelines. *Id.* at 7.

I agree with the government that Carter has not presented a medical condition identified by CDC as necessarily placing him at a risk for severe illness from the virus. The Court does not dispute that Carter has asthma. But, the CDC now classifies asthma as a lesser risk factor for severe illness related to COVID-19.

As noted, defendant is relatively young; he is 35 years old. Although Carter avers that he has asthma, Carter has not provided the Court with any evidence to establish that his asthma has

10

any impact on his daily life.  Indeed, the term "asthma" appears just three times in Carter's 194 pages of medical records, and those references are not illuminating.

Absent evidence of other (and current) underlying conditions that make Carter particularly vulnerable to COVID-19, his mild asthma alone is not grounds for compassionate release.  This aligns with the decisions of numerous courts, denying compassionate release where the defendant has claimed mild asthma as his or her only medical condition. *See United States v. Bailey*, CCB-14-146, 2020 WL 4366340, at *2 (D. Md. July 30, 2020) (declining to grant compassionate release solely on the basis of asthma); *United States v. Wilson*, 2020 WL 4287592, at *4 (S.D. W.Va. July 27, 2020) ("mild intermittent asthma" was not a compelling reason to grant compassionate release); *see also, e.g.*, *United States v. Wheeler*, No. 19-cr-00085 (ESH), 2020 WL 2801289, at *3 (D.D.C. May 29, 2020); *United States v. Perez*, No. 15-cr-2874-BAS-1, 2020 WL 3639739, at *4 (S.D. Cal. July 6, 2020); *United States v. Slone*, Cr. No. 16-400, 2020 WL 3542196, (E.D. Pa. June 30, 2020); *United States v. Anguiera*, No. 11-CR-116S (1), 2020 WL 3424530, at *5 (W.D.N.Y. June 23, 2020); *United States v. Mascuzzio*, No. 16-cr-576 (JFK), 2020 WL 3050549, at *3 (S.D.N.Y. June 8, 2020); *United v. Miller*, No. 18-cr-30034, 2020 WL 2093370, at *3 (C.D. Ill. May 1, 2020).

Because Carter has failed to provide an extraordinary and compelling reason for compassionate release, I need not address the relevant sentencing factors under 18 U.S.C. § 3553(a).  Nevertheless, I note that a reduction of Carter's sentence to time-served would be inconsistent with the § 3553(a) factors.

To be sure, Carter appears to be engaged in the hard labor of rehabilitation: he has taken numerous educational courses and even achieved honor roll at North County Community College for the Fall 2019 semester.  ECF 156-4 at 2, 5; *see also* ECF 167 at 2.  The Court

applauds Carter for his efforts at rehabilitation.  And, Carter claims he has a job opportunity waiting for him.  ECF 167 at 2.  Moreover, he asserts that, if released, he will be "a productive and law biding [sic] citizen."  *Id.* at 3.  He implores the Court to give him "a 2nd chance to show" his rehabilitation.  *Id.*

However, Carter has only served a little over half of his 15-year sentence.  And, as the government notes, Carter's criminal history includes prior firearms convictions as well as controlled substances offenses.  *See* ECF 162 at 14; *see also* ECF 54-1 (Pre-plea criminal history report).  Indeed, he concedes that he has "a serious criminal history . . . ."  ECF 167 at 2.  These facts militate against granting Carter a reduction in his sentence.

### V.    Conclusion

For the forgoing reasons, I shall deny the Motion (ECF 162).

An Order follows, consistent with this Memorandum.


Date:   August 18, 2020                              _____/s/_____
                                                     Ellen Lipton Hollander
                                                     United States District Judge